09-1170-cr
USA v. Cerna

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————————

August Term, 2009

(Argued: March 18, 2010

Decided: April 27, 2010
Errata filed: May 10, 2010)

Docket No. 09-1170-cr

————————————

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

JOSE RICARDO CERNA, also known as Jose Cerna, also known as Rocardo Cerna, also known as Jason Padilla,

*Defendant-Appellant.*

————————————

B e f o r e :

KATZMANN and HALL, *Circuit Judges*, and RAKOFF, *District Judge.**

————————————

Appeal from a judgment of conviction entered in the United States District Court for the

Southern District of New York (Alvin K. Hellerstein, *Judge*), following a bench trial at which the

defendant was found guilty of illegal reentry. Defendant challenges the district court's previous

denial of his motion to dismiss the indictment on the ground that his prior order of deportation

---

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of
New York, sitting by designation.

was invalid.[1]  We hold that the district court's factual finding that the defendant knowingly and intelligently waived his right to appeal the deportation order and so failed to exhaust his administrative remedies as required by 8 U.S.C. § 1326(d)(1) was clearly erroneous, and that its additional findings that he failed to meet the requirements of § 1326(d)(2) and (3) either were based on this erroneous factual finding or were otherwise legally flawed.  We further hold that the administrative exhaustion requirement of § 1326(d)(1) can be excused when an alien has received ineffective assistance of counsel.  We therefore vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

———————

DANIEL L. STEIN, Assistant United States Attorney (Randall W. Jackson, Assistant United States Attorney, *of counsel*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee.*

DARRELL B. FIELDS, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant.*

———————

KATZMANN, *Circuit Judge*:

This case gives us occasion once again to take note of the exceptionally poor quality of representation often provided by attorneys retained by aliens as they attempt to negotiate the complexities of our immigration law.  *See Aris v. Mukasey*, 517 F.3d 595, 596 (2d Cir. 2008). Here, despite the fact that the immigration judge ("IJ") specifically found that the defendant was

---

[1] This case was originally assigned to the Honorable John E. Sprizzo.  At the time Cerna's motion to dismiss the indictment was decided, however, the case was temporarily reassigned to the Honorable Kevin T. Duffy, who denied the motion.  The case was subsequently transferred back to Judge Sprizzo, who conducted the bench trial that was held on April 3, 2008. After Judge Sprizzo passed away, the case was reassigned to the Honorable Alvin K. Hellerstein, who imposed sentence.

eligible for relief from deportation in the form of a waiver of inadmissibility under former §

212(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1182(c) (repealed 1996),

and despite the fact that the defendant's counsel indicated that he would file an application for

such relief, no application was ever filed. We hold today that the district court committed clear

error when it found that the defendant knowingly and intelligently waived his right to contest the

deportation order that was subsequently issued. Because the district court's determinations that

the defendant did not meet the requirements of § 1326(d)(2) and (3) either were predicated on

this erroneous factual conclusion or were legally erroneous, its decision cannot stand on these

additional findings. We further hold that ineffective assistance of counsel may be grounds to

excuse the requirement of 8 U.S.C. § 1326(d)(1) that a defendant charged with illegal reentry

who brings a collateral challenge to the prior deportation order must have exhausted

administrative remedies in the immigration proceeding.

For non-citizens at risk of deportation the consequences of inadequate counsel can be

devastating.[2] Because such incompetence undermines the fair and effective administration of

justice, courts must be ever vigilant. We cannot countenance the circumstance in which the

failure of counsel to meet the most basic professional standards denies the alien a meaningful

opportunity for judicial review. *Cf. Padilla v. Kentucky*, No. 08-651, 559 U.S. ___, slip op. at 6

(2010) ("The importance of accurate legal advice for noncitizens accused of crimes has never

been more important.").

---

[2] *See generally* Symposium, *Overcoming Barriers to Immigrant Representation: Exploring Solutions*, 78 Fordham L. Rev. 453 (2009) (discussing the significant need for adequate representation of immigrants, the consequences of immigrants' receiving inadequate or no representation, and possible solutions to these problems).

Accordingly, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

**BACKGROUND**

Defendant-Appellant Jose Ricardo Cerna is a native of El Salvador who moved to the United States in 1983, at the age of ten, and became a lawful permanent resident of this country in 1989. In May 1990, at the age of sixteen, Cerna was convicted of two counts of criminal sale of a controlled substance, after selling drugs on two occasions to undercover officers. He was sentenced to two concurrent terms of one to three years' imprisonment. In May 1992, at the age of eighteen, he was found with a loaded firearm and was convicted of attempted criminal possession of a weapon in the third degree. He was sentenced to one and one-half to three years' imprisonment. In March 1995, at the age of twenty-one, after again selling a controlled substance to an undercover officer, he was convicted of criminal sale of a controlled substance in the fifth degree. He was sentenced to two to four years' imprisonment.

In October 1995, while Cerna was incarcerated, the United States Immigration and Naturalization Service ("INS") ordered him to appear for a hearing to determine whether he was subject to deportation. On April 12, 1996, Maria Liz, of the law firm of Liz & Botshon, entered a notice of appearance as Cerna's attorney. The deportation hearing was held on May 17, 1996, before an IJ at the Ulster Correctional Facility in Napanoch, New York. Cerna appeared in person, while his counsel, Andrew Friedman of Liz & Botshon, participated by telephone. At the hearing, the IJ found that Cerna's deportability had been established by clear and convincing evidence, but he also found that Cerna was eligible for relief from deportation in the form of a

4

waiver of inadmissibility under former § 212(c) of the INA, 8 U.S.C. § 1182(c) (repealed 1996).[3]

Cerna's attorney asked for, and was granted, 45 days to file Cerna's application for § 212(c) relief, but he never filed the requisite documents.

Sixteen days after the agreed-upon filing deadline, the IJ issued a deportation order, dated July 17, 1996. The record contains a cover letter from the Immigration Court Clerk to Maria E. Liz of Liz & Botshon, with a "cc" to Cerna at the Mohawk Correctional Facility in Rome, New York, that apparently accompanied this order. The clerk's cover letter states,

> Attached is a copy of the written decision of the Immigration Judge. This decision is final unless an appeal is taken to the Board of Immigration Appeals. The enclosed copies of FORM EOIR 26, Notice of Appeal, and FORM EOIR 27, Notice of Entry as Attorney or Representative, properly executed, must be filed with this office on or before 8/16/96. This appeal must be accompanied by proof of paid fee ($110.00).

App. for Def.-Appellant Jose Ricardo Cerna ("Cerna App.") 79. No appeal was ever taken, nor did Cerna or his counsel seek any other relief (such as filing a motion to reopen). On July 22, 1997, a little over a year after his deportation order was issued, Cerna was deported to El Salvador.

By December 13, 2000, Cerna had returned to the United States without the consent of the Attorney General or the Secretary of Homeland Security. On that date, he was arrested in the Bronx for criminal possession of a controlled substance, a charge to which he later pleaded guilty. He was sentenced to time served.

On July 30, 2004, Cerna was indicted in the Southern District of New York for

---

[3] "Prior to 1996, former § 212(c) of the INA vested the Attorney General with broad discretion to cancel deportation orders for aliens who met certain residence requirements and had not served five years in prison for an aggravated felony." *United States v. Lopez*, 445 F.3d 90, 92 (2d Cir. 2006) (quotation marks omitted).

unlawfully reentering the United States in violation of 8 U.S.C. § 1326(a) and (b)(2). He was arrested on this charge on June 12, 2007. In August 2007, Cerna moved to dismiss the indictment on the ground that he had not been lawfully deported.

A collateral challenge to a prior deportation order in an unlawful reentry case is governed by 8 U.S.C. § 1326(d), which provides that

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that —
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

Cerna conceded that he had not exhausted his administrative remedies in the prior deportation proceeding, but he argued that this failure should be excused because his lawyer's failure to file an application for § 212(c) relief, compounded by his failure to inform Cerna that he had not filed the application, amounted to ineffective assistance of counsel. He further argued that he was deprived of the opportunity for judicial review because of his counsel's ineffectiveness. Finally, he contended that the entry of the deportation order was fundamentally unfair because there was both a fundamental procedural error, in the form of his counsel's ineffective assistance, and resulting prejudice because, absent the error, there was a reasonable probability that he would have been granted relief under § 212(c).

In support of his motion to dismiss the indictment, Cerna submitted a declaration stating, *inter alia*, that (1) his family had hired the law firm of Liz & Botshon to help him avoid deportation; (2) he "had no reason to believe that Mr. Friedman would not file the appropriate [§

6

212(c)] papers, since he indicated at the hearing that he would do so;" (3) for 90 days before his deportation, he was in a holding facility without phone privileges and that during this period, his family attempted to contact his attorney but failed; (4) while he was incarcerated and awaiting deportation, he believed that his attorney was taking steps to prevent his deportation, and he "did not believe that there was anything else that I could do or needed to do to contest my deportation;" (5) "I did not learn that my attorney had failed to file the § 212(c) application until I was deported;" and (6) "I do not recall ever having received written notice of my right to appeal my deportation order." Cerna App. 32-33.

The district court denied Cerna's motion. It explicitly stated that it made no finding as to whether Cerna's counsel had been ineffective, but it found that even assuming that Cerna's counsel was "unacceptable," Cerna had knowingly and intelligently waived his right to any administrative remedies in light of the fact that he took no action to contest his deportation during the year that elapsed between the issuance of the deportation order and his deportation. *United States v. Cerna*, No. 04 Cr. 765, 2008 WL 216632, at *2 n.2 (S.D.N.Y. Jan. 23, 2008). The district court further found that Cerna was not deprived of judicial review by his counsel's purported ineffectiveness because "he sat on his rights" — in other words, because he failed to exhaust his administrative remedies. *Id.* at *4. Finally, the district court found that the entry of the deportation order against Cerna was not fundamentally unfair because, again, Cerna had failed to exhaust his administrative remedies, and more generally because Cerna's multiple criminal convictions rendered it unlikely that he would have been granted relief under § 212(c). *Id.* at *4-5.

On April 3, 2008, the district court held a bench trial at which the parties stipulated to the

7

relevant facts, and Cerna was convicted of illegal reentry. On February 20, 2009, Cerna was sentenced. The Probation Office calculated an offense level of 21 and a criminal history category of VI, which resulted in a Guidelines range of 77 to 96 months. While the district court found this calculation to be correct, it ultimately concluded that a criminal history category of VI significantly overstated the seriousness of his criminal record, particularly in light of the fact that certain of Cerna's convictions were for conduct committed when he was a juvenile (although he was convicted as an adult). Accordingly, it based its sentence on a reduced criminal history category of II, which produced a Guidelines range of 41 to 51 months. Noting that in the years since Cerna's last non-immigration-related arrest he had embraced religion and consistently provided for his family, the district court stated, "your case is a difficult one because you're like two persons. You were one person at one time in your life and now you're a different person in another part of your life." Cerna App. 149. The district court sentenced Cerna principally to 42 months' imprisonment.

This appeal followed.

## DISCUSSION

Before we address the primary legal issue raised by Cerna on appeal, we must address the district court's factual finding that he knowingly and intelligently waived his right to administrative remedies as well as its findings that he failed to meet the requirements of § 1326(d)(2) and (3). Because the statute provides that all three requirements must be met before a collateral challenge is permitted, if the district court correctly determined that Cerna failed to meet any one of them, his motion to dismiss the indictment was properly denied.

We have previously held that "the exhaustion requirement [of § 1326(d)(1)] must be

8

excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." *United States v. Sosa*, 387 F.3d 131, 136 (2d Cir. 2004). However, if an alien knowingly and voluntarily waives his right to appeal an order of deportation, then his failure to exhaust administrative remedies will bar collateral attack on the order in a subsequent illegal reentry prosecution under § 1326(d). *United States v. Johnson*, 391 F.3d 67, 75-76 (2d Cir. 2004). The district court found that there had been a valid waiver. Cerna argues that this finding was clearly erroneous. We agree.

In general, "[b]ecause it entails mixed questions of law and fact, we review *de novo* the district court's denial of [a] motion to dismiss the indictment" when an alien has brought a collateral challenge to an order of deportation under § 1326(d). *United States v. Scott*, 394 F.3d 111, 116 (2d Cir. 2005). However, where the contested issue is "a [d]istrict [c]ourt's factual findings regarding whether a waiver of rights is knowing and voluntary," we apply "a clear error standard." *United States v. Calderon*, 391 F.3d 370, 375 (2d Cir. 2004). While clear error review "permits only limited reexamination of factual findings where the district court's account of the evidence is plausible in light of the record viewed in its entirety," *Doe v. Menefee*, 391 F.3d 147, 163-64 (2d Cir. 2004) (quotation marks omitted), reversal is appropriate "when, although there is evidence to support the finding, on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed," *id.* at 164 (quotation marks and alterations omitted).

> A district court's factual findings may be clearly erroneous where the court failed to synthesize the evidence in a manner that accounts for conflicting evidence or the gaps in a party's evidentiary presentation; incorrectly assessed the probative value of various pieces of evidence; or failed to weigh all of the relevant evidence before making its factual findings.

9

*Drake v. Portuondo*, 553 F.3d 230, 240 (2d Cir. 2009) (citing *Menefee*, 391 F.3d at 164) (quotation marks and alterations omitted).

Here, the district court's opinion does not explain how it resolved the apparent conflict between the evidence indicating that notice of his right to appeal was sent to Cerna and the statements made in Cerna's declaration indicating that he was unaware that an adverse decision had been made or that he might otherwise have reason to doubt that his attorney was taking action on his behalf. While the district court acknowledged Cerna's assertions that, for example, his attorney assured him that he would file an application for relief under § 212(c), *see Cerna,* 2008 WL 216632, at *1, and that he does not recall having received written notice of his right to appeal the deportation order, *id.* at *2, it nevertheless found that the fact that one year elapsed between entry of the deportation order and Cerna's actual deportation compels the conclusion that Cerna knowingly and intelligently waived his administrative remedies, *id.* at *2 n.2. It is possible that the district court did not credit the assertions made in Cerna's declaration, but the court offered no explicit statement to that effect and no explanation of why it did not find Cerna to be credible. If the district court did not discredit the declaration, it failed to explain why, in the face of the statements made therein, Cerna could nevertheless be found to have "sat on his rights." *See, e.g.*, *Ali v. Mukasey*, 525 F.3d 171, 174 (2d Cir. 2008) (finding that "absent written notification of the alien's right to appeal . . . there is insufficient evidence of a knowing and intelligent waiver").

The mere fact that a year passed between the issuance of the deportation order and Cerna's deportation cannot, in and of itself, be the factual basis for the district court's finding of valid waiver. According to Cerna's declaration, he believed during this period that his attorney

10

had filed an application for § 212(c) relief and was taking whatever other steps might be necessary to avert his deportation. Indeed, the record shows that his attorney indicated at the deportation hearing that a § 212(c) application would be filed. We decline to hold that an incarcerated alien whose lawyer has stated he would file an application for relief from deportation has an obligation to check up on the lawyer to confirm that the application has been filed or risk waiving his right to appeal. To the contrary, we have previously held that the obligation runs the other way: an immigration attorney has an obligation to keep his client informed of relevant dates and decisions, and the attorney's failure to do so can constitute ineffective assistance of counsel.

In *Aris v. Mukasey*, for example, an alien was incorrectly informed by a paralegal at his attorney's firm that no hearing had been scheduled on the issue of his deportability. 517 F.3d at 598. The alien therefore missed the hearing, and a deportation order was entered *in absentia*. *Id.* He received a letter from the INS informing him that he was to be deported, but his lawyer, to whom he showed the letter, informed him that he would "take care of everything." *Id.* His lawyers subsequently moved to reopen the deportation proceedings, but this motion was denied. *Id.* The alien's lawyers, however, failed to inform him of this denial, and for "nearly a decade, [the alien] lived under the mistaken belief that the law firm had resolved his immigration problems," until he was arrested. *Id.* We held that the alien had received ineffective assistance of counsel and, moreover, that the BIA had abused its discretion in denying his motion to reopen the case without addressing the fact that the alien had relied on the paralegal's incorrect information. *Id.* at 600. As we noted there,

> [the petitioner], an immigrant with limited familiarity with American immigration law, acted reasonably when he relied on [the] information [provided by the paralegal] and

11

concluded that he did not need to appear before the IJ. One reason that aliens retain legal assistance in the first place is because they assume that an attorney will know how to comply with the procedural details that make immigration proceedings so complicated.

*Id.* (quotation marks and alteration omitted).

In sum, we find that the district court "failed to synthesize the evidence in a manner that accounts for conflicting evidence . . . ; or failed to weigh all of the relevant evidence before making its factual findings." *Drake*, 553 F.3d at 240 (alterations and internal quotation marks omitted). Its finding that Cerna knowingly and voluntarily waived his right to administrative remedies, based solely on the passage of time and without synthesis of conflicting evidence in the record, is therefore clearly erroneous.

In addition, we conclude that the district court's denial of Cerna's motion to dismiss the indictment cannot stand on its findings that Cerna did not satisfy the requirements of § 1326(d)(2) and (3). With regard to § 1326(d)(2), we have previously held, in *United States v. Perez*, that ineffective assistance of counsel in the form of a failure to file a § 212(c) application when an alien was eligible for such relief can satisfy the requirement that the alien was improperly deprived of the opportunity for judicial review. 330 F.3d 97, 101 (2d Cir. 2003). The district court distinguished *Perez* on the ground that Cerna "sat on his rights." *Cerna*, 2008 WL 216632, at *4. Because we find, for the reasons just discussed, that the district court's factual determination that Cerna waived his right to further review was clearly erroneous, we also find that its conclusion on this point, which is based in part on that flawed factual conclusion, must be reconsidered.

Further, in order to satisfy the requirement of § 1326(d)(3) that "the entry of the [deportation] order was fundamentally unfair," an alien must show "both a fundamental

12

procedural error and prejudice resulting from that error." *Perez*, 330 F.3d at 104 (citing *United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002)). We have previously found that where counsel failed to file an application for relief under § 212(c), an alien can show both fundamental procedural error and prejudice by establishing that (1) a competent attorney would have filed the application, (2) the alien was prima facie eligible for § 212(c) relief, and (3) the alien could have made a strong showing in support of his application. *Id.* at 102. On the facts of this case, there is little doubt Cerna was prima facie eligible for § 212(c) relief, given that the IJ explicitly found that he was eligible; nor is there any doubt that a competent attorney would have filed such an application, given that the IJ had stated that Cerna was eligible and Cerna's attorney had indicated that he would file the appropriate papers. The parties dispute, however, whether the district court's conclusion that Cerna could not have made a strong showing in support of his application was correct.

This third requirement goes to establish prejudice resulting from a proven procedural error, and prejudice "is shown where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Copeland*, 376 F.3d 61, 73 (2d Cir. 2004) (internal quotation marks omitted). The question, then, is whether Cerna had a reasonable probability of receiving § 212(c) relief. An immigration judge considering an alien's § 212(c) application "'had to balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of . . . relief appeared to be in the best interests of this country.'" *Scott*, 394 F.3d at 119 (quoting *Lovell v. INS*, 52 F.3d 458, 461 (2d Cir. 1995) (alterations omitted)).

13

*Adverse factors* include: (1) the nature and circumstances of the exclusion ground at issue; (2) other immigration law violations; (3) the alien's criminal record; and (4) evidence indicative of an alien's undesirability as a permanent resident.

*Favorable factors* include: (1) family ties to the United States; (2) many years of residency in the United States; (3) hardship to the alien and his family upon deportation; (4) United States military service; (5) employment history; (6) community service; (7) property or business ties; (8) evidence attesting to good character; and, in the case of a convicted criminal, (9) proof of genuine rehabilitation.

*Id.* at 119-20 (citations omitted). In determining whether there is a reasonable probability that an IJ balancing these factors would have come out in favor of an alien, courts consider the information available at the time the § 212(c) application would have been filed, but for counsel's failure to do so. *Id.* at 118-19.

Without articulating the extent to which it had considered all of the various favorable and adverse factors, the district court found that Cerna's criminal record would have been a significant factor in this balance and would have prevented him from obtaining § 212(c) relief. *Cerna*, 2008 WL 216632, at *5. In addition, however, the district court found that even if an IJ might have granted such relief to Cerna, "the fact that the defendant knowingly and intelligently failed to exhaust his administrative remedies" was a sufficient basis to deny his motion to dismiss the indictment. *Id.* To the extent that the district court's conclusion that Cerna could not show that the entry of the deportation order was fundamentally unfair was predicated on its factual determination that he knowingly and intelligently waived his administrative remedies, it is flawed for the reasons explained above. To the extent that this conclusion was predicated on the premise that Cerna's prior criminal convictions required that he be denied § 212(c) relief, it is not supported by our prior decisions.

In *Copeland*, for example, we remanded for further findings on the applicable favorable

14

factors when defendant had four prior criminal convictions, including one for criminal possession of a weapon in the third degree (resulting in a one-year prison sentence), one for attempted criminal sale of a controlled substance in the third degree (resulting in a one-year prison sentence), and one for criminal possession of a weapon in the second degree after the alien had shot a man during an armed robbery (resulting in a sentence of 18-54 months' imprisonment). 376 F.3d at 62-63, 74-75. Similarly, in *Scott* we found that the alien had a reasonable probability of receiving § 212(c) relief when he had four criminal convictions, all pertaining to property theft, that had resulted in sentences of five years of probation, three days of community service, 2 to 4 years' imprisonment, and 3 to 6 years imprisonment. 394 F.3d at 113-14, 120-21. We do not find that Cerna's criminal record, with its three convictions — one of which pertains to conduct committed when Cerna was still a juvenile — outstrips in prejudicial value those we assessed in *Copeland* and *Scott*. We therefore cannot agree that Cerna's criminal record alone, as a matter of law, renders it improbable that he would have received § 212(c) relief. (As we noted in *Scott* and *Copeland*, between 1989 and 1995, more than one half of the applications filed for § 212(c) relief were granted. *Scott*, 394 F.3d at 121; *Copeland*, 376 F.3d at 74.)

On the record as it stands, we are not in a position to draw any conclusion regarding whether, considering the balance of favorable and unfavorable factors in Cerna's case, there is a reasonable probability that he would have received § 212(c) relief if an application had been timely filed. This task will remain for the district court on remand, if it reaches this issue.

Finally, we turn to the central legal question raised by the defendant on appeal, which the district court explicitly declined to reach — namely, whether ineffective assistance of counsel

15

can excuse a failure to exhaust administrative remedies under 8 U.S.C. § 1326(d)(1). While we have not previously addressed this specific question, we have held that the second and third requirements of § 1326(d) — that the alien be deprived of judicial review and that the entry of the deportation order be fundamentally unfair — may be met when an alien has received ineffective assistance of counsel. *Perez*, 330 F.3d at 101; *Scott*, 394 F.3d at 118-19. Also, as noted above, we have previously found that the administrative exhaustion requirement is excusable where the alien's waiver of the right to administrative remedies was invalid. *Sosa*, 387 F.3d at 136.

We now hold that ineffective assistance of counsel can be grounds for excusing the administrative exhaustion requirement of 8 U.S.C. § 1326(d)(1). Indeed, it would be incongruous to hold that an alien may be denied the meaningful opportunity for judicial review because of his counsel's incompetence so that § 1326(d)(2) is satisfied but that his counsel's incompetence cannot excuse his failure to seek or obtain administrative review.

On remand, in order to be excused from the administrative exhaustion requirement of § 1326(d)(1), Cerna will have to show "'that his counsel's performance was so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause.'" *Perez*, 330 F.3d at 101 (quoting *Saleh v. U.S. Dep't of Justice*, 962 F.2d 234, 241 (2d. Cir. 1992) (internal quotation mark omitted)). In order to establish fundamental unfairness, in turn, he must establish "'1) that competent counsel would have acted otherwise, and 2) that he was prejudiced by his counsel's performance.'" *Id.* (quoting *Rabiu v. INS*, 41 F.3d 879, 882 (2d Cir. 1994) (internal quotation marks omitted)). This analysis will entail the same three-pronged inquiry that we have previously applied when assessing whether ineffective

16

assistance of counsel in the form of a failure to file an application for § 212(c) relief can satisfy the requirements of § 1326(d)(2) and (3): (1) whether a competent attorney would have filed an application for § 212(c) relief, (2) whether the alien was prima facie eligible for such relief, and (3) whether the alien could have made a strong showing in support of his application. *Id.* at 102, 104. As previously noted, while the first two elements of this test are not seriously in dispute, the record is insufficiently developed at this point to allow us to draw any conclusions regarding the third element. On remand, therefore, "[t]he court must first obtain all of the facts relevant to the particular alien and then apply standards established under Section 212(c) to those facts, taking into account actual cases in which similarly situated aliens have been granted or denied discretionary relief." *Copeland*, 376 F.3d at 74.

## CONCLUSION

The district court's factual finding that Cerna knowingly and intelligently waived his right to administrative remedies and so failed to satisfy the administrative exhaustion requirement of 8 U.S.C. § 1326(d)(1) constituted clear error. The district court's additional determinations that Cerna failed to satisfy the requirements of § 1326(d)(2) and (3) either were based on this erroneous factual conclusion or were legally flawed. We therefore hold that the district court erred in denying the defendant's motion to dismiss the indictment. We further hold that ineffective assistance of counsel may be grounds for excusing the requirement of § 1326(d)(1) that an alien in an illegal reentry case bringing a collateral challenge to the prior order of deportation must have exhausted all administrative remedies in the prior proceeding. The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.

17